***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the alleged injury that is the subject of this claim is August 21, 2008. *Page 2 
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, an employer-employee relationship existed between Defendant-Employer and Plaintiff.
4. On such date, Defendant-Employer employed three or more employees.
5. Defendant-Employer is insured by Key Risk Insurance Company.
6. Defendants denied Plaintiff's claim.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Form 22
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Plaintiff's personnel file
 • Exhibit 5: Plaintiff's discovery responses
 • Exhibit 6: Transcript of Plaintiff's recorded statement
 • Exhibit 7: Industrial Commission Forms
 • Exhibit 8: Nurse's Notes relating to nursing home resident Catherine F.
 • Exhibit 9: Proposed work schedule for Plaintiff
The following documents were accepted into evidence as Defendants' exhibits:
 • Exhibit 1: Proposed work schedule for Plaintiff
 • Exhibit 2: Payroll/Personnel Change Notice dated 8/22/08
 • Exhibit 3: Plaintiff's resume *Page 3 
 • Exhibit 4: Amended Form 33
 • Exhibit 5: Plaintiff's discovery responses
 • Exhibit 6: Plaintiff's medical record dated 5/22/06
 • Exhibit 7: Light duty assignment for Plaintiff dated 8/29/08
Transcripts of the depositions of the following were also received post-hearing:
 • Tammy Stevens
 • Debbie Wentz
 • Dr. Gary Dean Ross (with Exhibit 1)
 • Dr. Eric J. Lescault
 • Dr. Glenn Lundy
 ***********
The following were submitted by the parties as:
 ISSUES
1. Whether Plaintiff sustained a compensable injury by accident on August 21, 2008?
2. To what compensation, if any, is Plaintiff entitled?
3. Whether Defendants should be sanctioned in this claim?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before Deputy Commissioner Harris, Plaintiff was 41 years old, with a date of birth of March 16, 1968. She is a high school graduate and has her *Page 4 
CNA license and several other health care certifications. Plaintiff has worked as a CNA for many years.
2. Plaintiff was a part-time CNA at Defendant-Employer's nursing home in Shallotte, North Carolina. She worked with a resident population which included several Alzheimer's patients.
3. One of these residents, Catherine F., was wheelchair-bound and had a history of grabbing herself and others. She was regularly placed in mitten-type restraints in order to prevent injury to herself and others.
4. On August 21, 2008, Plaintiff had just begun her 2:00 p.m.-to-10:00 p.m. work shift when Catherine F. approached Plaintiff from behind and grabbed Plaintiff's right wrist and forearm tightly. She held onto Plaintiff with both hands and her nails dug into Plaintiff's skin. Plaintiff turned to her left and attempted to extricate herself from the patient's grip, and as she did so, the patient pulled down on Plaintiff's right arm, whereupon Plaintiff felt a pulling sensation into her right shoulder. After Plaintiff freed herself, she felt pain and a "twinge" in her right arm and shoulder.
5. Plaintiff immediately reported the incident to the nurse on duty, who prepared an incident report. The report indicates that Plaintiff reported numbness and tingling in her right hand following the incident.
6. On August 22, 2008, Defendant-Employer sent Plaintiff to Dr. Gary Ross. Plaintiff reported that a patient in a wheelchair had grabbed her wrist and "forced external rotation." Plaintiff further reported that she subsequently experienced numbness and tingling in her right fourth and fifth fingers. Dr. Ross tentatively diagnosed a wrist sprain, prescribed medication, and wrote Plaintiff out of work for three days. *Page 5 
7. On August 25, 2008, Plaintiff called Dr. Ross' office and reported that she was not doing any better. Dr. Ross referred Plaintiff to Dr. Lescault, an orthopedist.
8. On August 28, 2008, Plaintiff saw Dr. Lescault. She reported that her right fourth and fifth fingers had become numb and that she was also experiencing pain in her right upper arm and shoulder blade. After examination, Dr. Lescault diagnosed a strain to the levator scapulae (a muscle in the shoulder blade area) and administered a steroid injection to relieve that condition. Dr. Lescault also suspected a possible crushing-type injury to a nerve or a traction injury to the brachial plexus nerve bundle. He prescribed medications and physical therapy and recommended that Plaintiff return to him in three to four weeks. If the numbness in Plaintiff's fingers had not resolved by that time, Dr. Lescault planned to consider performing an MRI or nerve conduction study.
9. Dr. Lescault assigned restrictions of no lifting over 20 pounds and no direct patient contact, and Plaintiff continued working in a light-duty capacity with Defendant-Employer.
10. Plaintiff did not return to Dr. Lescault, as Defendants did not authorize further treatment.
11. On September 17, 2008, Plaintiff went to the emergency room at Brunswick Community Hospital and was diagnosed with neck pain and cervical radiculopathy.
12. Defendants completed a Form 61 on September 18, 2008 stating that they had "insufficient information to accept or deny claim."
13. The Full Commission takes judicial notice that the Industrial Commission sent a notice letter to Defendant-Carrier dated October 11, 2008 notifying Defendant-Carrier that Plaintiff's Form 18 had been received and directing Defendants "to file a Form 60, 61 or 63 to *Page 6 
admit, deny or pay without prejudice" within 30 days after their receipt of the Form 18. The notice further stated that "failure to comply with this request will subject you to sanctions."
14. On March 2, 2009, Plaintiff began treating with Dr. Glenn Lundy, a chiropractor. Plaintiff complained of pain in her neck, low back and hip. On examination, Dr. Lundy noted decreased sensation in the C8 dermatome on the right, and weakness in the deltoids, triceps, biceps and the last two fingers of the right hand, as well as other findings. Based on the findings from his examination and the x-rays he took, Dr. Lundy suspected that Plaintiff had a cervical disc injury.
15. Prior to the August 21, 2008 incident, Plaintiff had already applied for work with Allied Home Health, a home care provider. Plaintiff was hired and began work with Allied on September 5, 2008. As of the date of the hearing before Deputy Commissioner Harris, Plaintiff continued to work with Allied on a full-time basis.
16. As of the date of the hearing before Deputy Commissioner Harris, Plaintiff contended that she was still having constant numbness in the fourth and fifth fingers of her right hand, and she described her right hand as "clawing," especially when she woke up in the morning.
17. As Dr. Lescault testified, his diagnosis on August 28, 2008 of a possible crushing-type injury to a nerve or a traction injury to the brachial plexus nerve bundle was a differential diagnosis, and he needed further evaluation to make a firm diagnosis. As he further testified, he believed as of August 28, 2008 that Plaintiff's possible nerve injury was related to an ulnar nerve problem and/or a problem along the C8-T1 dermatome (referring to the nerve root at the base of the neck). *Page 7 
18. While Dr. Lescault testified that Plaintiff's possible nerve injury could be consistent with the mechanism of injury in the August 21, 2008 incident, he did not testify that any nerve injury was more likely than not related to the incident. Dr. Lescault also did not testify that Plaintiff's right upper extremity condition, whatever the diagnosis, was more likely than not related to the incident.
19. Dr. Lescault did, however, testify that he believed Plaintiff's levator scapulae muscle strain was related to the incident. He expected that any symptoms related to that injury would have resolved within approximately six weeks following the incident, and he confirmed that the finger numbness Plaintiff reported was not related to the levator scapulae muscle strain.
20. Dr. Lescault confirmed that Plaintiff did not complain to him of any neck pain, nor did he find any neck injury upon examination.
21. When asked whether it was more likely than not that any of the symptoms that he treated in Plaintiff or any of the conditions that he diagnosed were related to the August 21, 2008 incident, Dr. Lundy testified that there was "a very good chance that she (Plaintiff) can be injured from that type of motion she described."
22. The greater weight of the competent credible evidence shows that Plaintiff's levator scapulae muscle strain was caused by the August 21, 2008 work-related incident. However, there is insufficient evidence of record to show that any right upper extremity condition suffered by Plaintiff since on or about August 21, 2008 is causally related to the August 21, 2008 work-related incident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff has shown that she sustained a compensable injury by accident on August 21, 2008. Specifically, Plaintiff has shown that her levator scapulae muscle strain was caused by the August 21, 2008 work-related incident and is compensable. N.C. Gen. Stat. § 97-2(6). However, the medical evidence of record is insufficient to show that any right upper extremity condition that Plaintiff has suffered from since on or about August 21, 2008 is causally related to the August 21, 2008 incident.
2. Plaintiff has not shown any disability related to her compensable injury and, therefore, is not entitled to any indemnity compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have Defendants pay for the initial treatment she received with Dr. Ross on August 22, 2008 and with Dr. Lescault on August 28, 2008, but not for any further treatment. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. In the Full Commission's discretion, as a reasonable sanction for their failure to timely file an effective admission, denial or initiation of payments without prejudice in this claim, Defendants should pay a fine of $500.00 to the Industrial Commission. N.C. Gen. Stat. § 97-18(j); Rule 601 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 9 
1. If they have not done so already, Defendants shall pay for the medical treatment that Plaintiff received with Dr. Ross on August 22, 2008 and with Dr. Lescault on August 28, 2008, including but not limited to prescriptions and mileage.
2. Defendants shall pay $500.00 to Plaintiff and $500.00 to the Industrial Commission as a reasonable sanction for their failure to timely file an effective admission, denial or initiation of payments without prejudice in this claim.
3. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $354.00 to Dr. Ross; $551.00 to Dr. Lescault, and; $239.00 to Dr. Lundy.
This the 15th day of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1